The next case called is 122486, Monson v. City of Danville, Agenda No. 3, Council for a Propellant. Are you ready? You may proceed. May I please report? When the act is plainly interpreted... State your name, please. My name is Miranda Soucy, and I represent the plaintiff appellant, Barbara Monson. When the act is plainly interpreted, each word is given meaning, and words are not judicially legislated into the act. The result of this case is clear. The trial court's order granting summary judgment should be reversed, and this case remanded for further proceedings. As this court is very well aware, when interpreting a statute, a statute must be read as a whole, giving meaning to each paragraph, sentence, clause, and word. Nothing should be rendered meaningless, nothing read into it that is not expressly articulated. And there are seven words that the trial court and appellate courts overlooked, dismissed, and rendered meaningless in this case. Except is otherwise provided by this article. Article 3, Section 102 clearly states in those first seven words, except is otherwise provided by this article. And that article is Article 3 of the Tort Immunity Act, which clearly, by its plain language in the title, applies to immunity from liability for injury occurring in the use of public property. And when reading Article 3, Section 102, it clearly and unequivocally provides that the only exceptions to the city's duty of reasonable care in this case, in the maintenance of its property, are located within Article 3. As a result, an analysis of ministerial versus discretionary acts is only warranted if the plain language of that particular section and the entire act is disregarded. By, one, completely disregarding those first seven words, or alternatively, by reading in or adding the word ministerial to Article 3, Section 102. As this court is aware, the word ministerial does not appear anywhere in the act, let alone Article 3, Section 102. And this court back in 1997 in Epstein articulated something similar with respect to Article 3, Section 108. And it indicated that the act did not implicitly distinguish between discretionary versus ministerial. It merely mentions discretionary in Article 2. And this court held that those two immunity sections are completely independent of one another. May I just ask a question so I'm clear on your argument? You're saying that because of the language except as otherwise provided in this article, which is Article 3, which is about injuries on public property, that means that no other section of the Tort Immunity Act can apply? In terms of exceptions to the duty that's articulated in Section 3-102, yes. And so, essentially, if I can expound on that. You're saying we're only going to look at 3-102, we can't look at anything else in the Tort Immunity Act? Only Article 3 for exceptions to 3-102, yes, by the plain language. Because as this court is aware, the first analysis when looking at duty and immunities with respect to the act is to first articulate whether or not there's a duty. So we look normally to the common law for the duties, but Section 3-102 is the only place in the act that actually articulates a duty. And it's not necessarily creating a new duty, because that's not the purpose of the act. It's codifying the common law duty and then setting forth the exceptions there too. So we look first to 3-102, and if we look there first and note that there is a duty, we then have to take into account that entire section and give each word meaning. And so there's two things in there. The except is otherwise provided by this article, but also the fact that discretionary and ministerial is not listed anywhere in that section. And so it sort of bucks against plain reading if we say, okay, there's a duty under 3-102, but we're then going to ignore except is otherwise provided by this article and then back up Article 2, which clearly is not Article 3. If this court should find that contrary to the plain language, there is a need for a ministerial versus discretionary analysis, I believe that summary judgment was still not warranted in this case, because there's a question first of law as to whether an act or omission related to the repair of public property is ministerial as a matter of law. And in that instance, we have to look at the common law for definitions of ministerial because ministerial does not arise out of the act. And if a ministerial analysis is warranted, the common law definition, as we can go back many hundreds of years and look at, and most notably I would point to the Chicago v. Stephen case in 1897, this court's very own opinion, it is very clear that when a corporation, a municipal corporation, exercises its power in building public property, creating an improvement, they then have a duty to keep that improvement or public property in good repair. And that court said that such a duty is not discretionary. It is purely ministerial. And that definition has followed in the 200 years since then throughout the case law. Obviously when the legislature enacted the Tort Immunity Act, they did not articulate the ministerial definition, I think which articulates that they meant with respect to public property to keep Chicago v. Stephen and the common law definition alive. And that holding repair work as ministerial as a matter of law is, first of all, I don't believe necessary to the outcome of this case, but it's consistent with the first seven words of 3-102 in that there is no reason for discretionary analysis. Are there not public property cases where the court looks to 2-109, the discretion in policymaking immunity section? There are a number of cases, and obviously the defendant has cited to a number of those. Throughout them, by and large, however, they are often not involving the use of public property. And I think that's where this becomes distinguishable, because 3-102 involves the use of public property. And then as you get further into it, it has to be by an intended user. And then obviously there needs to be notice. In most of those cases, for instance, they had cited to the Ray Chicago Flood and Heronic case, which are this court's very own opinions. Those cases did not involve use, and as a result, 3-102 was not at issue, because essentially what had happened in those cases is the failure to maintain public property resulted in damage to other property or adjacent property, and it wasn't someone who was an intended user using the public property. And so by and large, the cases are distinguishable in that respect. There are some other cases, for instance, the Ruchter opinion, which the appellate court and trial court both relied on significantly. And in that case, there was a waiver, and that's something that I've seen a lot throughout the appellate opinions, where the parties come in and they essentially agree or there's a certified question that 3-102 applies to ministerial, 2-201 applies to discretionary, and we're going to agree that this court needs to make a determination as to discretionary versus ministerial. And so that's the other sort of side of the coin. When there is use of the public property, there's often a waiver  Going back to the ministerial argument as a matter of law, I want to just briefly mention the defendant's interpretation in terms of how it can't be found to be a matter of law because that essentially would result in getting rid of 2-201 on its face. The defendant's interpretation essentially, from my perspective, as a matter of policy, would incentivize municipalities to remove any and all clear direction prescribing the manner in which repairs should be made, because essentially then the employees can walk into a deposition and say, I was acting under my discretion, there's nothing prescribing how I'm supposed to do this. And the result of that would be to eviscerate any liability under 3-102. In a plain reading, if that is the policy decision there, and following the plain reading, it would incentivize municipalities to enact clear direction and policies for employees making repairs, thus making it safer for those who are using the property. Are you saying that it can never be the policy of the municipality to be discretionary then? With respect to repairs? With respect to 3-102 and the use of public property, if we follow the common law and go back, for instance, to the Sieben case, repairs in and of themselves are considered ministerial because it is a duty that is articulated and rearticulated in the act of the municipality to conduct repairs to keep the property in reasonably safe condition. So as a result, in that instance, I would say no. I mean, as the cases articulate time and time again, there is sort of a bit of discretion in every public decision. And does de minimis repair work fit into that? I don't believe so. And I think that's one of the exceptions we have to get to, obviously, is if either under the plain reading of the act, which I obviously first articulated, or if we get into a ministerial versus discretionary analysis and we find that as a matter of law ministerial acts are repairs, then we do have to talk about the de minimis condition necessarily. And in this case, although it wasn't articulated by the appellate court and the trial court did not reach this issue, there's clearly questions of fact as to whether or not the condition in this case was de minimis or not. I think the defendant argued that it was a one to one and a half inch deviation. I think from the supplemental record A5 it shows a two inch deviation, approximately a little bit more or approximately less depending on how you look at it, but there's a question there. It resulted in a depression, pooling water. We have a commercial district, an adjacent light pole, adjacent to street parking, and a busy commercial street. And then there's regular vehicular and pedestrian traffic. And I think those are all aggravating circumstances that create a question of fact with respect to the de minimis condition. The plaintiff didn't have any obstruction of view or anything like that, she testified. The only thing she testified to was that there was the adjacent light pole she was trying to avoid and that she was walking towards her car with the metered parking and looking ahead towards there because there was a curb coming up. And I think those are aggravating circumstances in and of themselves. But nothing aside from that obstructing her view. But there was pooling water as a result of a recent rainstorm that had pooled in the V-shaped depression at issue in this case. You, in relying on what you call the plain reading of the statute, you're indicating that this acceptance otherwise provided in this article applies to the entire subparagraph A. Grammatically, though, isn't the reading just as reasonable to say that except it's provided in this article, there's no duty, and that's the end of it. And that would allow courts to look at all sections of the Court of Immunity Act. I personally don't read it that way because it has the comma, except as otherwise provided by this article, and then there's the comma, a local public entity has the duty. And in that instance, it would be an exception or immunity that would dissolve them up that duty in that instance. Because, obviously, the Tort Immunity Act only creates immunities and defenses. And so except as otherwise provided has to refer to an immunity or defense to that particular duty, just by the plain purpose of the Tort Immunity Act. I'd like to briefly go back to the ministerial issue in this case. And I've talked briefly about the fact that I believe if we have to get into ministerial versus discretionary, that it would be a matter of a question of law. But there are also questions of fact in this instance, if Your Honors decide to go down that route.  One is whether a conscious decision was made in this case. And the second would be whether or not any decision that was made was unique to a particular public office. And in this case, there's really two people's testimony that was at issue, Mr. Ahrens and Ms. Larson. And I think both of them had sort of unequivocally stated that it was their responsibility to make the decisions with respect to the sidewalk in this instance. And so when we're talking about a unique responsibility of someone's public office, I think it sort of is contrary to the definition of unique, when you have two separate people in two separate public offices saying that they're the ones that were responsible for it. And I think that that in and of itself would not fall under the definition of 2-201. Further, both of them indicated that the decisions that were made were made in collaboration with others, which were some engineering department employees, Cowan and Cole, and that it wasn't an individual making a decision, that they had a collaboration with four separate people, that they discussed the factors, came to some decisions, and that it was ultimately their ultimate decision, depending on who you're talking to, to determine whether or not to repair, but there was no indication that they made a decision contrary to the recommendation. Additionally, with respect to conscious decision, there was no indication that they made a conscious decision with respect to this particular slab of concrete. There was certainly an articulation that they were in and around the area, there was a construction project, they had painted different slabs of concrete, but no one said that they had a specific recall of making a decision about this particular slab of concrete. There was no paperwork, no documentation, no maps, nothing to substantiate it. And with respect to that, I think it is contrary to what a conscious decision would be. There was nothing articulating that a conscious decision or a unique decision in a person's particular public office was made that would allow this court to determine that discretionary immunity would apply. Is it your position that repairs are always a ministerial function? If we ignore the plain language of the statute and read the term ministerial into this discussion, then yes. With respect to repairs of public property and the use of them by intended users, if we go back in the case law, once they improve the property, meaning they create a sidewalk, it is their duty, and they cannot discretionarily get rid of that duty. It is a ministerial duty that they have to keep those sidewalks in good repair, and that comes from the common law, and obviously the act doesn't give us much in the way of assistance. Ms. Ducey, though, doesn't the law permit the municipality not to keep it in perfect condition under Astoran? I mean, there's minor defects that are frequently found, but it's not actionable. I agree with you, Your Honor, and that would go back to the de minimis argument. Certainly nothing is supposed to be perfect, but when we're dealing with a sidewalk and the use of public property, there's no bright line rule for determining whether or not something is de minimis. But you were saying before that no one noticed this particular sidewalk. It might have been something that they just didn't see because it was de minimis. It's possible, but we do have the photos in this case. It's hard because they said they made a decision, and they obviously were looking at the sidewalks in this case. They said that they must have, and that they made a decision about it, but they couldn't articulate anything that indicated that for sure that had happened. So there's questions of fact there. But with respect to the photos that are in this, I think many cases over the years have indicated that when you can look at the photos and you can tell that that condition did not arise overnight, that obviously it had happened over a period of time, you can infer constructive notice. And I think even if we can sort of ignore their testimony that they obviously had looked at this piece of slab at some point, but just couldn't recall, there is some constructive notice elements in this case, in that you've got those photos. You've got a slab of concrete that is depressed significantly over a period of time. You've got people doing snow removal in this particular area that was testified to on a regular basis. They were doing a beautification project that required dozens of employees in this particular area. And then you've got the construction workers in this particular area. So obviously they had the people there. And you can infer constructive notice from that particular set of facts. I don't think it makes a difference based upon the plain language, but he was making decisions in conjunction with three others who had already articulated, and it wasn't necessarily where and when in this particular instance. They had determined they were going to do a sidewalk project, so it was just determining the specific pieces of concrete at issue. And he made that decision in collaboration with three others, but said he was the final arbiter. But Ms. Larson also said she was the final arbiter, so there's a question of fact as to whether or not that is actually the case in this instance. If I can just briefly wrap up, if there's no further questions. Section 3-102 clearly states that the only exception to a city's duty of ordinary care in the maintenance of property are subsequently delineated within Article 3. And on that basis, we would ask that the appellate court be reversed in this case, be remanded for further proceedings. Thank you.  My name is Jennifer Turriello, and I'm here this morning representing the City of Danville, the defendant appellee in the case. The plaintiff has pitched two arguments this morning to avoid, or attempt to avoid the application of 2-201 immunity to her claim. The first argument is what she dubs the strict statutory construction argument, and through which she argues that 3-102 negates and or supersedes 2-201 of the Tort Immunity Act. The second argument is the discretionary ministerial analysis, and the plaintiff maintains under that analysis, 2-201 immunity would not apply here in this case. Neither argument produces the outcome the plaintiff desires, and I'm going to address each of these arguments in turn this morning. Under the strict statutory construction analysis, the plaintiff contends that a comparison of the prefatory clauses of 3-102 and 2-201 yields the conclusion that, again, Section 3-102 supersedes 2-201, and that the only immunities that can apply in a case implicating 3-102 duty of care are those found in Article 3 of the Act. Plaintiff's wrong on both fronts. Let's look at that statutory language, that prefatory language. This has come up already. This is from 3-102. Except as otherwise provided in this article, a local public entity has a duty. Except as otherwise provided in the article speaks to there being instances where there won't be a duty. It doesn't have anything to do with curbing immunity or saying that the immunities from Article 2 can apply to a case involving a 3-102 duty of care. Now, an argument I didn't hear today, but is in the briefs, I didn't hear anything about the prefatory language of 2-201. That's what I expected to hear about today. Again, the prefatory language of 2-201 is except as otherwise provided by statute. So the question is, is 3-102 an exception to 2-201 under that language? And we submit it's not. This strict statutory construction argument actually presents an instance of deja vu for the court, because this isn't the first time the court's been presented with this argument. This language has been in the Act for quite some time. If we're getting it wrong as a matter of strict statutory construction, that's been happening for some time now. This is not new language. The same argument was submitted in conjunction with the briefs to this court in the NRA Chicago Flood Litigation case dating back to 1997. This strict statutory construction argument didn't carry the day in that case. It's never carried the day in any case, and it shouldn't carry the day here. Plaintiff is of the belief that this court's pronouncements in Murray breathe life into this argument. But Murray didn't involve Section 3-102 of the Act. What was at issue in Murray was the interplay between 3-108A, 3-109, and 2-201. And all that happened in Murray was that 3-109 has an exception for Wolf-1-Wanton, and that got engrafted onto 2-201, such that the Wolf-1-Wanton counts went to a jury. What plaintiff wants to do here is an entirely different outcome. He wants to wipe out 2-201 immunity entirely whenever there's a case involving or implicating 3-102 duty of care. That's the end game for plaintiff. Ms. Turriello, as I look at this, I wonder whether there is a merger of the two arguments, both the statutory and the ministerial versus discretionary. 3-102 sets forth the specifics that apply to property maintenance, and it goes into a lot of detail about the exceptions to the duty based on lack of constructive notice, cost benefit of the inspection process. Does this language seem to rein in the discretion that a city might otherwise be afforded in deciding whether to repair property that is an unreasonably safe condition, essentially making it a ministerial function to repair such unsafe property if the Section 3-102 conditions are not met? And if not, why not? I don't think so, Your Honor. And the argument that a repair always has to be, repair and maintenance is always ministerial, you heard it today, stems from case law that's been interpreted as there are cases from this Court, including this Court, that say that whenever you're adopting, selecting a public work or making an improvement, that is ministerial, I'm sorry, that is discretionary, and then once you execute or carry out the plan, that is ministerial. And I think it stems from that, as well as a line of cases that talks about that the cautions against casting everything is discretionary, that inherent in any public act is always going to be some element of discretion. So, and maybe I'm venturing away from what Your Honor asked me to. My question is more that 102 applies to property maintenance, right? It goes into a lot of detail about the exceptions where the duty would not incur, right? About duty. Right. Duty. Absolutely. Just duty. I don't call that an immunity provision at all. Okay, so here is where you have a duty, and here is where that duty will be accepted, right? So exceptions. I know it's not immunity, but it's exceptions to where a duty will be there. Wouldn't looking at the language of that statute, wouldn't it be, when you look at it and say the exceptions to the duty would make you think that, but for these exceptions, you have a ministerial duty. If we get into the ministerial versus discretionary analysis, right? I mean, you said she has two ways of going, right? She says 3102 applies. It's more specific. It says article. We're looking at this article, and you said she has a second way of going, and that is discretionary versus ministerial. And the fact that the duty has delineated exceptions, why wouldn't the whole maintenance, property maintenance issue be a ministerial situation? I think we're talking about apples and oranges to some extent, because it's, I call 3102 a duty provision, and yes, there are exceptions, and those are for a plaintiff to establish, so that can't ever be an immunity. Versus 2201, it's a different question. Whether or not there is a duty is something separate and apart from whether or not an immunity applies. That's my argument. But for 2201 to apply, immunity or not, there has to be exercise of discretion. Correct. And I think I would disagree with the notion that repair and maintenance is always ministerial. It's not. In fact, case law holds otherwise. The 2201 analysis, each case is supposed to be analyzed on its facts, and that's why we see varying results. And I think it's fair to say, as courts have held, that there can be a discretionary act or omission of repair or maintenance. That has occurred because there was a policy decision made and a discretionary act involved. Could you help me? The argument that was made here was that the way you interpret this means there would never be liability in any situation. So 3102 says there's a duty only if there's actual or constructive notice, correct? Correct. For a plaintiff to establish. For a plaintiff to establish, right. Okay. So what if we change the facts a little bit? What if there's actual notice? The municipality knows that a number of people have fallen and injured themselves in this area. And the municipality chooses not, makes a decision, we're not going to fix this. Is the city immune? Depends on the circumstances under which they decided that they weren't going to fix it. If the circumstances satisfy the definition of what is a discretionary act and what is a policy decision, then yes. A good decision or a bad decision, that can't be it. If they just make a decision, they say, we just don't think, maybe we don't have the money, whatever it is. We're making a decision with actual notice, we're making a decision not to fix this. What's the analysis there? The analysis would be into the circumstances of whether or not there was balancing of factors and a determination made that this is the course we're going to go. They said three people got hurt, we don't have a lot of money, we're not going to do this. If there's immunity, then that's immunity. Yes. If it satisfies the definition of policy decision and a discretionary act, as has been established in the standards that this court has provided. Is there ever a situation, obviously that's why we're setting this up, how could there, if there only can be a duty, if there's actual constructive notice, and assuming that dangerous condition continues to exist, that there's a policy decision that's made not to fix it, when could there ever be liability? I think this goes into their argument that if we continue to interpret 2-2-0-1 the way we're doing, we're going to eviscerate the duty. I think that's what we're talking about now. Can you give me an example where there would be liability? Well, there have been, where there would not. No, can you give me an example where there could be liability, the plaintiff would win, if there's actual constructive notice of the dangerous condition on the land and the city's chosen not to fix it. When would there be liability ever? When there isn't a conscious decision made as to the particular defect, when you can't satisfy the qualifications for discretionary acts or a policy decision. That's the standard that's been put up. And our position is those are real obstacles to getting to 2-2-0-1 immunity. It's not a cakewalk for municipalities to just come into court. There have been cases where municipalities have claimed, I'm entitled to 2-2-0-1 immunity and the courts have said no. And what's discretion, can you tell us about one? Corson, one, for instance. The first appeal in Corson, which isn't discussed by the plaintiff, but that was a case where it got up there and there was no deposition of the person who allegedly made the discretionary policy determination. The court sent it back, said we don't have the evidence here to show who made this decision, what factored into the decision. It got sent back. There's Snyder, there's the Granite City case, there have been cases where municipalities do not get 2-2-0-1 immunity. And I think the notion that, I think some of what's driving some of the policy arguments on the other side here is this notion that courts are just rubber stamping, approval. Anytime a municipality invokes 2-2-0-1 immunity, they're going to get it. And that's just simply not true. I haven't seen or heard, and you won't see it in the briefs, any line of case law that's been cited for this notion that courts are now overly expansively interpreting 2-2-0-1 such that it's swallowing up 3-1-0-2 duty. There are two separate analyses going on, and that's one of the follies in the argument here. But, you know, I think it's also a very bleak perception, if you will, of municipal employees in general, that they're just going to get 2-2-0-1 immunity. They're just going to sit around and say, oh, well, we don't have to fix this, because we can always find somebody we can put up for a deposition who will see the magic language from the cases and just track the case law, and then we'll get immunity. I mean, I don't think that's a realistic picture at all of what's going on here. I don't think the gloom and doom scenario that you've heard about this swallowing up the duty is, in fact, accurate. But the other side, let's consider the flip side here. If we're going to change things up and now decide that 2-2-0-1 immunity doesn't apply for any case implicating 3-1-0-2 duty of care, wow, that's going to hurt the municipalities. That's going to hurt the local public entities quite a bit, because these are the exact types of lawsuits that they frequently face. We're going to take discretionary immunity completely off the table. How will that be in keeping with the act at all and its purpose? Well, let's put flesh on this. If the public employee we spent a lot of time looking at the language of 3-1-0-2, but 2-0-1 says that in the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion, even though abused. Right, when you're talking about whether or not immunity would be rubber stamped. I mean, it's not a real tough standard when somebody makes, an employee makes a decision, even if he abuses it, you could still get immunity. So to put flesh on this, if you have the public employee in there and say you're deposing him and you say, were you aware of 3-1-0-2 that you had a duty of reasonable care with respect to this? Yes, I was aware of that. Do you come under either of those exceptions? Did you read the exceptions in 1-0-2? Yeah, I looked at the exceptions. Do the exceptions apply? No, they don't apply. What happened? Well, I decided I wasn't going to do it. It's my call, I'm an employee, I saw it, I decided I'm not going to do it. Even if you look at all that and he abused his discretion, you're still entitled to immunity under your analysis. Is that right? That's right. I know it's right. I know it's your argument. Does it seem right? I don't think there's ever been a case where somebody's just sat for a deposition that I'm aware of, at least published, where somebody's just commented a deposition and said, well, I just didn't fix it because I didn't want to fix it. But he could. He could, but that's not this case. I want to make that very clear. Doesn't the duty of 3-1-0-2, is it much of a duty under that analysis? It is. No, it's still, it is not the situation here. Yes, 2-2-0-1 has been accorded generous interpretation. And I won't say otherwise, but I think that the indication from the legislature in having 2-2-0-1 is that obviously the whole purpose of the act is to prevent the dissipation of public funds, to protect government employees from the operation of government. Doesn't it only make sense, really, under my first question, which was, here's the duty, here are the exceptions, you have to fit under these exceptions, it's a ministerial act, you have to do it, and this, the discretionary analysis of 2-2-0-1 pertains to something else? It's, from our standpoint, it's duty versus immunity. That you can have a duty under 3-1-0-2 and still, under the right circumstances, there can be an immunity that applies. And, I mean, backing up a little bit, I mean, again, I didn't hear the argument today, but it's certainly in the briefs, and what I thought I would hear was more about the prefatory language of 2-2-0-1, and the accept as otherwise provided by statute. Because that's, some of, there has been some musing in some appellate court decisions, and they've been cited here. Corson was one, Horton's another, where appellate courts have looked at that language, albeit every time it's been in dicta. Nobody's pulled the trigger on this argument at all. And if we're getting it wrong, we've been getting it wrong for a while, because this language has been here for a long time. So it would be a complete departure and reversal, of course, if we were to say, oh, well, now we're going to look at this language. And, again, in all those cases, it ended up being dicta, as we pointed out. Or it wasn't central to the holding, or some other immunity provision came into play, such as in Horton, where 3-1-0-5 came into play. But, you know, again, I think the notion that 2-2-0-1 is swallowing up the 3-1-0-2 duty isn't a realistic picture that's being painted for the court. Again, I'm not seeing any, I haven't heard of any case law that's being cited saying, look at what's going on here. This is a calamity. We're not going to have 3-1-0-2 duty anymore. Again, I would say there are cases where municipalities have been told, no. I mean, look at, it's not necessarily in the 3-1-0-2 context, but, I mean, discretionary immunity gets applied in lots of different contexts. We know this. I mean, just in the past year, there was the Barr case that came up. 2-2-0-1 immunity got denied on that case, and I understand that wasn't a 3-1-0-2 duty, but I think courts are well aware of their gatekeeping function, and are using the standards put in place by the court to evaluate 2-2-0-1 immunity, and, when appropriate, kicking it out if it doesn't satisfy those standards of being a discretionary policy determination. But, again, I'm not sure. I mean, the court's not going to sit back and say, was this a good choice or a bad choice? The city manager decided, you know, we don't have much money, even though we've got people who got hurt. That's not what courts do. This is a policy decision. They had a choice, yes or no. They made the choice, and, therefore, no matter what happens, therefore they're immune. We're not going to get into whether it's a good decision or not. And, picking up on that, I don't want a jury to go into that decision. I mean, then we're going to have juries. If 2-2-0-1 immunity doesn't apply, then we're going to have people second-guessing a public official's determination of, was Project A more important than Project B. And that's why we have the immunity. There are exceptions that public officials make that are separate and apart from what's occurring in 3-1-0-2, where it would make sense with respect to the official applying discretion, and maybe that discretion in getting them out, and they'd be immune. 3-1-0-2 does have, you know, some exceptions that they're not called immunity, but under those exceptions, the municipality would be out, you know, not having constructive notice, doing an inspection, a reasonable inspection of the property. They have ways under 3-1-0-2, it's not just like, hey, you have this duty, do it. I mean, there are some ways in those exceptions. When we talk about 2-2-0-1 being thrown off the books, I mean, it would only be with respect, at least as this case goes, with respect to 3-1-0-2. There's other instances where 2-2-0-1 is used outside of the public entity having a duty with respect to maintaining property, right? There are, absolutely, there are. I think I do agree with the point that you just made. If I could just briefly say one more thing, we didn't get to it today, the de minimis argument. It's an equally valid basis to affirm in this case. I would implore the court to look at, we put together a very comprehensive statement of facts here. I think there's been some fudging of some of the facts as you've heard them today. Doug Ahrens absolutely testified the buck stopped with him on this project. There's not more than one person saying they made the discretionary policy determination. But I'll rest on the briefs and ask for affirmance here. Just to be clear, in terms of the de minimis rule, isn't the case law that it still has to be examined on the particular facts of each case? Absolutely, and here we have pictures in the record, unlike most of your cases, somebody actually thought to put a ruler up against this thing. So you've got pictures in the record with a ruler up against it to show what it measures, which is, again, not what we usually find in the cases. So, yes, that is correct. Thank you very much for your time and attention. Thank you. I just want to correct one misstatement that was made just at the end there. Mr. Ahrens wasn't the only one that said it was his responsibility. Ms. Larson actually said on C174 of the record, I am the person who said, look, we need to fix some sidewalks. And then she went on, on 175, to talk about how, after she made that decision, how she consulted with the engineering department as to how to do that. I want to reverse for a second to something that I actually do agree with, Councilwoman. We've been getting it wrong with respect to this particular section. And she argued that we needed to reverse course, if we are to agree with my proposition and my argument. But I don't think that's actually what we're doing. What we're actually doing is getting back to basics. And this Court has repeatedly, over the many years of its existence, gone back to statutory interpretation basics and looked at the statutes at issue. And in this particular case, that's not what has happened over the years. And we do really need to get back to basics. The defendant's argument would have us ignore the plain language of three separate sections of the Act. The first section is 1-101, which is essentially the section that articulates that the Tort Immunity Act merely sets forth immunities and defenses. It does not articulate duties. This is not a duty provision, it only articulates immunities and defenses. The second section she would have us ignore and read out is actually the beginning of 2-201, and she mentioned that herself, where it says, except as otherwise provided by statute. Which means discretionary immunity was not ever intended to apply in all situations. There are certainly exceptions to that. And then finally, the last section, which I've articulated over and over again in my argument, is section 3-102. I want to go back to a question that one of the justices here had asked earlier, which had to do with section 2-201 and 3-102, and whether or not one was a duty versus an immunity. And first of all, many of the cases that have articulated and reviewed 3-102 have very aptly called it an immunity. And in fact, I believe it was in Petulo Banks in the First District most recently in 2014, where it talks about the immunity provided in section 3-102A. And I think one of the comments was that 3-102 doesn't set forth an immunity, it doesn't say the word immunity. I would disagree with that, because in 2-201 it also doesn't use the term immunity. There's no word immunity in either of those sections, but if we go back to the title of Article 2 and the title of Article 3, title of Article 2 says general provisions relating to immunity. And then Article 3 is immunity from liability for injury occurring in the use of public property. And I would implore you that based upon the title of those two acts, or articles, and then the plain language of both, that they actually are and if you look at the definition of that, it means essentially there's an immunity. It's a reason that this does not apply. And so we can't ignore the fact that this is an immunity provision. One of the other things that came up was I believe the testimony in a deposition that someone might be able to just walk in and say, I just didn't want to, I didn't feel like it, I just didn't want to. And counsel indicated that that's not this case, but I would implore you that we're actually not too far off. The testimony in this case does not have a lot of teeth to it. There are no documents. There's nothing to substantiate or back up what was said, and the testimony essentially was I made a decision. And there wasn't a lot to back up. There wasn't a specific recollection. There wasn't a conscious decision. There wasn't anything other than it's my job, and I made a decision, and we decided that wasn't part of this. But there was nothing substantiating it. So I don't think it's that far off, and I think that that's part of the risk of this, is if we do find that Section 2-201 applies to 3-102, we are going to be in a situation where 3-102 is completely eviscerated, which is contrary to the plain language. And it's actually contrary to the plethora of common law that came before the Act, which indicates that in a situation where repairs are required to public property, it is the duty of the municipality to conduct those repairs. And any act of remission in the course of that, when someone is using the property and is an intended user and they have notice, they are liable for. And that's part of the reason why sort of the secondary argument there is that repairs are ministerial. They don't get out of it by having a decision made. It's something they have to do. They have to keep people safe, and they are not accepted from that based upon the plain language. One of the policy arguments, I believe it was made in the amicus briefs throughout this case, was obviously money and how expensive repairs are, and I just want to sort of wrap up with that. I want to reiterate that Section 3-102 only applies if a municipality has notice of the condition and if the injured party is an intended user. There is absolutely no requirement for a municipality to keep public property open for use. A municipality can quite simply close off a section of sidewalk if they deem it to be in need of repair and they can't get to it right away. Same as a building, same as any other public property, and closing off public property and closing off this particular small section of sidewalk was completely free. So on its face, that public policy argument fails. And unless there are any further questions, I would just wrap up and implore you to reverse the appellate court and reverse the trial court and remand us for further proceedings. Thank you. Enjoy your stay in the Supreme Court.